UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JACE,<br><br>          Plaintiff,<br><br>     v.<br><br>KEN CLARK, et al.,<br><br>          Defendants. | Case No.: 1:22-cv-00476-KES-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR PLAINTIFF'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Michael Jace is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

**I.     INTRODUCTION**

The Court issued its First Screening Order on March 27, 2023. (Doc. 13.) It found Plaintiff's complaint failed to state a cognizable Eighth Amendment claim against any named Defendant. (*Id*. at 3-9.) Plaintiff was granted leave to file a first amended complaint curing the deficiencies identified in the screening order, or, alternatively, to file a notice of voluntary dismissal. (*Id*. at 9.)

On May 4, 2023, Plaintiff filed a first amended complaint. (Doc. 14.)

//

//

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal

2

quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. C'nty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a

'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**IV. DISCUSSION**

**A. Plaintiff's First Amended Complaint**

Plaintiff names the following individuals as Defendants in his amended complaint:

Ken Clark, Warden, Corcoran State Prison;

Ronald Broomfield, Acting Warden, San Quentin State Prison;

Ron Davis, Warden, San Quentin State Prison;

Ralph M. Diaz, Secretary, California Department of Corrections and Rehabilitation;

Connie Gipson, Director of Adult Institutions, California Department of California Department of Corrections and Rehabilitation;

Tammy Foss, Director of Correction Services and California Correctional Health Care Services; and

4

Joseph Bick, M.D., Director Health Care Services, California Department of Corrections and Rehabilitation and California Correctional Health Care Services.

(Doc. 14 at 1-2, 4-5.) Plaintiff seeks a declaratory judgment, compensatory and punitive damages, costs of suit and any other relief the Court deems just. (*Id.* at 15.)

### B. Plaintiff's Factual Allegations

Plaintiff alleges that Governor Newsom declared a state of emergency due to the COVID-19 pandemic on March 4, 2020. On March 11, 2020, CDCR activated a centrally located command center where CDCR and CCHCS experts monitored information, prepared for known and unknown events, and exchanged information to make decisions and provide guidance quickly. Plaintiff asserts the "'center's goal is to implement measures and strategies to protect inmates and staff during the COVID-19 pandemic …,'" quoting from a declaration by Defendant Gipson.

Next, Plaintiff asserts a county wide shelter-in-place order issued on March 16, 2020, in Marin County where San Quentin State Prison is located. And on March 19, 2020, Governor Newsom issued Executive Order N-33-20 directing Californians to "'heed the state public health directives,' including the Order of the State Public Health Officer issued that same day." That order directed "'all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sections.'" Plaintiff alleges that on March 24, 2020, Governor Newsom issued Executive Order "No. 3241-6553 that directed CDCR to suspend admission of inmates to state custody for 30 days," an order that was subsequently extended an additional 30 days.

Plaintiff contends that in March 2020, "SQSP knew about and refused offers by the Innovative Genomics Institute in Berkeley, California to provide free COVID-19 testing at SQSP." Plaintiff further asserts that on April 10, 2020, "Receiver J. Clark [Kelso] required that inter-institution transfer be approved by the Health Care Placement Oversight Program (HCPOP) in consultation with the CCHSC public health team because such transfers 'carries significant risk of spreading transmissions of the virus between institutions.'"

Plaintiff asserts all Defendants "were aware of each of the preceeding eight statements of

5

fact that make it abundantly clear that COVID-19 was a serious, easily communicable disease.'" Plaintiff contends Defendant Gipson's statement "should remove any question of Defendants awareness and acquiescence." Plaintiff states that in his opinion "CDCR either deliberately lied to the State and public respectively, or failed miserably in defendant Gipson's stated goal."

Next, Plaintiff alleges that on April 23, 2020, "Defendants transferred Plaintiff from SQSP to Corcoran State Prison ignoring shelter-in-place and public health orders." He asserts they executed the transfer "in full knowledge that an inter-institution transfer 'carrie[d] significant risk of spreading transmission of the disease between institutions.'" Plaintiff maintains "CCHCS ignored its own advice" until late May 2020.

Plaintiff contends the "bus used to transfer" him "was filled to capacity and social distancing guidelines were ignored," no masks were provided despite a statewide mask mandate, and Plaintiff was not tested prior to the transfer. When Plaintiff arrived in Corcoran, he was placed in a holding cell with about 15 to 20 other inmates; none wore masks and social distancing guidelines were ignored.

Plaintiff maintains, upon information and belief, that "it was weeks after Plaintiff arrived at Corcoran that he was tested for COVID-19." Plaintiff asserts that although the CDCR receiver was not able to provide adequate testing in March and April, "Defendants transferred Plaintiff in full knowledge that their actions increased the likelihood of his being exposed to COVID." Plaintiff further alleges that "Defendants knew it wouldn't be possible to provide adequate testing until July 2020."

Next, Plaintiff alleges he was initially placed in cell 4B1R-32 on April 23, 2020. Also assigned to that cell was Inmate Felix. On that date, both had a negative COVID-19 status. Plaintiff asserts that while Corcoran was on a modified program at that time, Inmate Felix was a porter and thus was not forced to remain in the cell. Felix's duties meant he, and other staff with whom Felix interacted, "traveled in and out of infected and non-infected areas" where masking and social distancing protocols were "laxly enforced." Plaintiff believes Felix "came into contact with multiple staff who were exposed to or infected with COVID-19."

Plaintiff states: "Allegedly Plaintiff had been given a job in the kitchen that began May

6

1    19, 2023. But Plaintiff had never been called to work until after I/M Felix tested positive for
2    COVID-19, and he had filed grievances against [Corcoran] regarding COVID-19 protocol
3    violations." He states he "never worked or volunteered a single day in the kitchen," but was
4    issued two rules violation reports for refusing to go to work. At the hearings associated with the
5    reports, "Plaintiff gives reason for refusing to go to work" and was concerned "Corcoran, which
6    has a history of corruption, would falsify records" and would "claim Plaintiff was in the kitchen
7    prior to his date of infection," to argue Plaintiff "'could have contracted the highly communicable
8    disease from anywhere in the prison as his cellmate had.'"

On "June 15, 2023," Plaintiff tested positive for COVID-19. He experienced "multiple
10   blood-pressure readings that exceeded 170 over 100," asserting "[t]his was further injury to
11   Plaintiff that only occurred because Defendants actively and knowingly made specific affirmative
12   decisions that created greater risk that Plaintiff would contract COVID-19." Plaintiff states he
13   was 57 years old when infected with COVID-19 and has high blood pressure. He asserts
14   hypertension is one of the comorbidities identified by the Centers for Disease Control and
15   Prevention, elevating the risk of complications from COVID-19. Plaintiff asserts a study of data
16   from "Wuhan, China revealed that individuals with hypertension face about a 6% death of rate
17   death …that is comparable with death rates of people from suffering from diabetes (7.3%) and
18   respiratory disease (6.3%).

19   Next, Plaintiff states all named Defendants "held positions and were assigned as
20   previously stated," are "sued individually and in their official capacity," and acted under color of
21   state law.

**C. Plaintiff's Claim**

23   Plaintiff presents a single claim arising under the Eighth Amendment: "Plaintiff has a
24   right to be protected against a heightened exposure to serious, easily communicable disease."
25   (Doc. 13 at 4.)

<u>Eighth Amendment: Conditions of Confinement</u>

27   The Eighth Amendment protects prisoners from inhumane methods of punishment and
28   from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v.*

7

*Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference …." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837; *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) [outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day] with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) [outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day]). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for

8

1  Eighth Amendment purposes. *Id*. Amorphous "overall conditions" cannot rise to the level of cruel
2  and unusual punishment when no specific deprivation of a single human need exists. *Id*. Further,
3  temporarily unconstitutional conditions of confinement do not necessarily rise to the level of
4  constitutional violations. *See Anderson*, 45 F.3d 1310, citing to *Hoptowit v. Ray*, 682 F.2d 1237,
5  1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (in
6  evaluating challenges to conditions of confinement, length of time the prisoner must go without
7  basic human needs may be considered)).

8      Subjectively, if an objective deprivation is shown, a plaintiff must show that prison
9  officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*,
10 501 U.S. at 303; *Labatad*, 714 F.3d at 1160. "Deliberate indifference is a high legal standard."
11 *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official
12 must not only 'be aware of the facts from which the inference could be drawn that a substantial
13 risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting
14 *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not,
15 then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*.
16 (quoting *Gibson*, 290 F.3d at 1188). To prove knowledge of the risk, however, the prisoner may
17 rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to
18 establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir.
19 1995).

20                         Initial Comments

21     First, the Court will address Plaintiff's naming of Defendants Clark, Allison, and Diaz. As
22 Plaintiff was advised in the First Screening Order, Tammy L. Campbell replaced Ken Clark as
23 Warden at California State Prison-Corcoran in June 2022 and Jeff Macomber replaced Kathleen
24 Allison and Ralph Diaz as CDCR Secretary on December 28, 2022. (*See* Doc. 13 at 4, n.3 & n.4.)
25 Plaintiff should have identified and named the proper individuals in his first amended complaint.
26     Second, Plaintiff states he is suing all Defendants in their individual and official
27 capacities. However, "[s]uits against state officials in their official capacity ... should be treated as
28 suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr*., 599

1  F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official
2  capacities as a suit against the state of California). An official capacity suit "represent[s] only
3  another way of pleading an action against an entity of which an officer is an agent." *Kentucky v.*
4  *Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official
5  personally, for the real party in interest is the entity." *Id*. at 166. "The Eleventh Amendment bars
6  suits for money damages in federal court against a state, its agencies, and state officials acting in
7  their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).
8  Therefore, Plaintiff's claim for monetary damages against the named defendants in their official
9  capacities are barred by the Eleventh Amendment.
10  Lastly, as concerns Plaintiff's request for a declaratory judgment, "like other forms of
11  equitable relief, [a declaratory judgment] should be granted only as a matter of judicial discretion,
12  exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431
13  (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in
14  clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief
15  from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d
16  1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns a verdict in favor of
17  Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated.
18  Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary.

### Analysis

20  The objective prong of the deliberate indifference test— that the constitutional deprivation
21  be sufficiently serious—is not at issue. As stated in the First Screening Order, "[i]t is undisputed
22  that COVID-19 poses a substantial risk of serious harm." (Doc. 13 at 6.) Nevertheless, Plaintiff
23  again fails to state an Eighth Amendment claim as concerns that test's subjective prong.
24  With regard to Plaintiff's transfer from one facility to another based upon the March 24,
25  2020, shelter in place order, as explained in the First Screening Order, the shelter-in-place "order
26  prohibited the transfer of out-of-state or county-housed inmates into CDCR facilities …." (Doc.
27  13 at 7.) Plaintiff was transferred from SQSP to California State Prison, Corcoran; he was not
28  transferred to or from an out-of-state or county facility to a CDCR facility. Moreover, as stated in

the First Screening Order, "[e]ven if the shelter-in-place order did prohibit inter-CDCR transfers, Plaintiff does not allege each individual 'personal involvement' in or 'causal connection' between that Defendant's conduct and the alleged transfer." (*Id.*) In the first amended complaint, Plaintiff again refers to the named Defendants in a global fashion only (*see, e.g.*, Doc. 14 at 7 [identifying all and stating in conclusory fashion that the Defendants "were aware of each of the proceeding eight statements of fact …"] & 11 ["Defendants actively and knowingly made specific affirmative decisions that created greater risk that Plaintiff would contract COVID-19].) It is not enough to assert all Defendants were "aware" or "knowingly made affirmative decisions" without connecting each individual named to the conduct alleged. (*See also* Doc. 13 at 8.) Stated another way, Plaintiff must explain how each person acted with deliberate indifference regarding Plaintiff's transfer from San Quentin to Corcoran. The Court is skeptical that all named Defendants had a hand in that decision[1] and a blanket assertion such as that proffered here in insufficient. *Iqbal*, 556 U.S. at 678; *Rizzo*, 423 U.S. at 373-75; *Johnson*, 588 F.2d at 743; *Verdin v. Allison*, No. 5:22-cv-00597-DMG-SSC, 2024 WL 5384572, at *9 (C.D. Cal. June 7, 2024) ("Plaintiff was previously cautioned that he must explain 'what authority any of these Defendants had over housing decisions,' including the Defendants employed as medical personnel, and has, again, failed to do so"); *Jones v. Sherman*, No. 1:21-1093-ADA-EPG, 2022 WL 783452, at *8 (E.D. Cal. Mar. 11, 2022) ("the failure to follow certain COVID-19 guidelines, without more, is insufficient to satisfy the subjective prong of the deliberate indifference standard"), adopted 2022 WL 4238875 (E.D. Cal. Sept. 14, 2022); *Stephen v. Tilestone*, No. 2:20-cv-1841 KJN P, 2021 WL 289379 (E.D. Cal. Jan. 28, 2021) (concluding that plaintiff failed to allege Eighth Amendment violation for prison transfer that purportedly put him at extreme risk of contracting COVID-19 because he did not allege facts showing how any particular defendant violated his rights).[2] As noted above, deliberate indifference is a high legal standard and a plaintiff must "not

---

[1] For example, as pled, the first amended complaint asserts that both the warden at SQSP and the warden at Corcoran ordered Plaintiff's transfer from SQSP to Corcoran yet fails to explain why both wardens would have been so tasked. Nor is there any indication that Defendant Bick, the "Director Health care Services, CDCR & CCHCS" would have likewise been tasked with ordering Plaintiff's transfer.

[2] Compare *In re CIM-SQ Transfer Cases*, No. 22-mc-80066-WHO, 2022 WL 2789808, at *7 (N.D. Cal. July 15, 2022) (stating plaintiff "plausibly alleged that each of the defendants ... participated, as supervisor or otherwise, in

11

only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057. Nor has Plaintiff specifically alleged the causal link between any potential supervisory defendant and the claimed constitutional violation. *Fayle*, 607 F.2d at 862; *Ivey*, 673 F.2d at 268. Plaintiff's additional reference to a shelter-in-place order affecting Marin County[3] and Clark Kelso's April 10, 2020, memorandum does not change the analysis.[4]

Next, concerning allegations involving a lack of social distancing protocols, as indicated in the First Screening Order, "courts in this district repeatedly have held that such general allegations fail to state a claim." (Doc. 13 at 7.) *See also, e.g.*, *Benitez v. Sierra Conservation Center, Warden*, No. 1:21-cv-00370-BAM (PC), 2021 WL 4077960, at *5 (E.D. Cal. Sept. 8, 2021) ("The Court recognizes that '[p]risons present unique concerns regarding the spread of this virus; by their very nature, prisons are confined spaces unsuited for 'social distancing.' [Citation.] Nevertheless, CDC guidelines specifically contemplate that individuals will be confined within prisons during the duration of this pandemic"). Nor has this Court identified any legal authority to indicate that prison officials' refusal to use free COVID-19 tests offered by outside entity— here, the Innovative Genomics Institute in Berkeley—states a claim for relief.

Any attempt by Plaintiff to overcome the speculative nature of his allegations concerning causation and future harm, as identified in the First Screening Order (*see* Doc. 13 at 8), are insufficient. Concerning causation, simply stating that he was initially placed in a "holding cell

---

one or more of the decisions to transfer prisoners, regarding the process for transferring prisoners, and regarding the housing of prisoners after the transfer, in a manner that exposed plaintiff[ ] to heightened risk of contracting COVID-19.These alleged actions are sufficient to constitute unconstitutional conduct").

[3] https://coronavirus.marinhhs.org/sites/default/files/Files/Shelter%20in%20Place/Shelter%20in%20Place%20Order%2016%20March%202020.pdf, last accessed 2/6/2025.

[4] The failure to follow prison regulations or policies is not a federal constitutional violation. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009); *Case v. Kitsap Cnty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) ("[T]here is no § 1983 liability for violating prison policy," quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)); *see also Sandin*, 515 U.S. at 481-82 (recognizing prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates"). *See also, e.g.*, *McDuffie v. Cal. Dep't of Corr. and Rehab.*, No. 5:21-cv-00824-JWH-SHK, 2024 WL 606178, at *6 (C.D. Cal. Jan. 4, 2024) (noting that "many other courts within the Ninth Circuit have concluded that the failure by a prison to implement CDC policies did not constitute deliberate indifference under the Eighth Amendment" and collecting cases).

with 15 to 20 other inmates without masks," that on April 23, 2020, both he and his assigned cellmate were negative for COVID-19 but that his cellmate worked as a porter and moved about the prison, causing Plaintiff to contract the disease later is speculative. Plaintiff alleges he contracted COVID on "June 15, 2023" (*see* Doc. 14 at 11); even assuming the correct date was June 15, *2020*, nearly two months had elapsed at that point. (*Id*.) More significantly, Plaintiff again fails to explain how that circumstance was "caused in any respect by any Defendants' alleged" deliberate indifference. Plaintiff fails to specifically connect any named Defendant to the actions alleged—his having been placed in a holding cell with more than a dozen persons in April 2020 and/or being housed with a cellmate who worked as a porter—for the cause of his harm.

As concerns future harm, the First Screening Order stated: "Plaintiff filed this action on April 21, 2022. He does not allege that he has actually suffered these long term conditions [increased risk of heart issues; adverse effects to nervous system; elevated blood pressure and heart rate associated with "POTS" or long haul COVID] as a result of any Defendant's deliberate indifference to the risks presented by COVID-19, particularly in light of the global pandemic." (*See* Doc. 13 at 8-9.) In his first amended complaint, Plaintiff alleges that after contracting COVID-19 he "experienced multiple blood-pressure readings that exceeded 170 over 100 … that only occurred because Defendants actively and knowingly made specific affirmative decisions that created greater risk that Plaintiff would contract COVID-19." (Doc. 14 at 11.) Plaintiff also asserts that he already had high-blood pressure, and that hypertension is a comorbidity that "elevates the risk of complications from COVID-19." (*Id*.) Again, Plaintiff fails to specifically connect any named individuals' action or inaction to the future harm alleged. Moreover, Plaintiff's assertions involving elevated blood pressure readings where Plaintiff had pre-existing high blood pressure, amounts to an unreasonable inference. *Doe I*, 572 F.3d at 681 (courts "are not required to indulge unwarranted inferences").

In sum, the first amended complaint fails to state a cognizable Eighth Amendment claim because Plaintiff has not alleged specific acts or omissions of each Defendant and a causal connection between those acts or omissions and the harm alleged. *Rizzo*, 423 U.S. at 373-75; *Burgess v. Newsom*, No. 1:21-cv-00077-SAB (PC), 2021 WL 4061611, at *4 (E.D. Cal. Sept. 7,

2021) ("Despite the Court's previous advisement of the linkage requirement, Plaintiff's first amended complaint merely lists the Defendants names in the caption only without any reference or linkage in the body of the complaint allegations"), recommendation adopted 2021 WL 4975140 (E.D. Cal. Oct. 25, 2021). Global references to "Defendants" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

Because Plaintiff's first amended complaint is deficient for the same reasons as those articulated in the Court's original screening order and because Plaintiff has failed to remedy those deficiencies, the Court assesses that Plaintiff cannot cure his pleadings and, thus, that leave to amend would be futile. *See Hartman v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to amend futile where complaint's allegations belied plaintiff's entitlement to relief).

## V. CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** this action be **DISMISSED** for Plaintiff's failure to state a claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations

//
//
//
//

1 under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time
2 may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th
3 Cir. 2014).

4 IT IS SO ORDERED.

5 Dated:    **February 10, 2025**                    _____
6                                                                    UNITED STATES MAGISTRATE JUDGE